UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                                     :
MEDICAL EDUCATION DEVELOPMENT              :
SERVICES, INC.,                                      :
                                                     :
                          Plaintiff,                 :
                                                     :                05 Civ. 8665 (GEL)
      -v.-                                            :
                                                     :           **OPINION AND ORDER**
REED ELSEVIER GROUP, PLC,                   :
ELSEVIER, INC., and LINDA ANNE             :
SILVESTRI,                                           :
                                                     :
                          Defendants.                :
                                                     :
--------------------------------------------------------------x

Mitchell J. Rotbert, The Rotbert Law Group, LLC,
Bethesda, Maryland, for plaintiff.

William S. Strong, Amy C. Mainelli Burke, Kotin,
Crabtree & Strong, LLP, Boston, Massachusetts,
and David Rabinowitz, Moses & Singer LLP,
New York, New York, for defendants.


GERARD E. LYNCH, District Judge:

        Plaintiff Medical Education Development Services, Inc. brings this action against

Elsevier, Inc. and Linda Anne Silvestri,[1] alleging copyright infringement, unfair competition,

and misappropriation arising from defendants' alleged copying of plaintiff's licensing exam prep

_____

        [1] This action was originally brought against Reed Elsevier Group, PLC, Linda Anne
Silvestri, Laurent W. Valliere, Professional Nursing Seminars, Inc., and Nursing Reviews, Inc.
(Original Complaint, dated October 10, 2005.)  On October 6, 2006, plaintiff filed an amended
complaint, naming as defendants only Reed Elsevier Group, PLC, Elsevier, Inc., and Linda Anne
Silvestri.  (Amended Complaint, dated October 6, 2006.)  On October 16, 2006, plaintiff
voluntarily dismissed, without prejudice, its claims against Valliere, Professional Nursing
Seminars, Inc., and Nursing Reviews, Inc.  On August 23, 2007, the Court approved a stipulation
dismissing, with prejudice, plaintiff's claims against Reed Elsevier Group, PLC.  Elsevier, Inc.
and Linda Anne Silvestri are therefore the only remaining defendants in this action.

books for student nurses.  Defendants move for partial summary judgment, arguing that they are entitled to judgment as to those portions of their publications that do not infringe plaintiff's works, and that certain claims should be dismissed as time-barred or preempted.  For the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are either undisputed or construed in the light most favorable to the plaintiff.

## I.     The Publications

### A.     *Easy Steps*

Plaintiff Medical Education Development Services, Inc. ("MEDS") publishes books and other media designed to help aspiring nurses prepare for and pass two nationally-administered licensing examinations.[2]  (P. 56.1 Stmt. ¶ 1; D. 56.1 Stmt. ¶ 1; Hoefler Decl. ¶ 3.)  The exams, the National Council's Licensure Examination for Registered Nurses ("NCLEX-RN") and the National Council's Licensure Examination for Practical Nurses ("NCLEX-PN"), are substantially similar in most respects, although the NCLEX-RN tends to be more complex than the NCLEX-PN given the expectation that registered nurses will exercise more skill than practical nurses.  (Hoefler Decl. ¶ 4.)  In 1985, Patricia Hoefler, founder and president of MEDS, began to write a series of books intended to teach students and NCLEX candidates how to improve their reasoning skills in the practice of nursing.  (P. 56.1 Stmt. ¶ 1; D. 56.1 Stmt. ¶ 1; Hoefler Decl. ¶¶ 1, 8-9.)  All of these books were duly registered with the United States

_____

[2] In addition to helping nurse candidates prepare for and pass these examinations, MEDS's materials are also intended as general curriculum resources.  (Hoefler Decl. ¶ 3.)

Copyright Office. (Hoefler Decl. ¶ 11.)

In 1991, Hoefler wrote such a book entitled *NCLEX-RN Exam: Easy Steps to Passing* ("*Easy Steps*").[3] (P. 56.1 Stmt. ¶ 1; D. 56.1 Stmt. ¶ 1; Hoefler Decl. ¶ 13.) The book, which was registered with the United States Copyright Office in 1991 and 1992, is designed to help the student nurse develop and enhance her capacity to comprehend and resolve the type of real-life nursing situations tested on the NCLEX. (Hoefler Decl. ¶¶13, 15; P. Mem. 2.) It proceeds in three parts. The first part sets forth various methods for comprehending and analyzing likely exam questions; the second part identifies useful test-taking strategies; and the third part discusses the relevance of nursing principles, theories, and processes to the NCLEX-RN. (Hoefler Decl. ¶ 13.) According to plaintiff, this three-part discussion contains an original organizational structure and uses original associations, key words, phrases, and sentences. (Hoefler Decl. ¶ 14.)

In 1994, several years after the release of *Easy Steps*, MEDS published *The Complete Q&A Book for the NCLEX/CAT-RN* ("*Complete Q&A*"), a work derived from, and intended to be sold with, *Easy Steps*. (Hoefler Decl. ¶ 16.) MEDS registered *Complete Q&A* with the United States Copyright Office in 1994. (Id.)

B. The Allegedly Infringing Works

Defendant Elsevier, Inc. also publishes books designed to help aspiring nurses prepare for and pass the NCLEX-RN and the NCLEX-PN. (P. 56.1 Stmt. ¶ 1; D. 56.1 Stmt. ¶ 1.) In 1999, Linda Silvestri wrote, and Elsevier published, several such books, including *Saunders*

---

[3] Various editions of *Easy Steps* have since been published, including an edition in 1992. (Hoefler Decl. ¶ 13.) However, the material aspects of the book have changed little since its initial publication in 1991. (Id.)

*Comprehensive Review for the NCLEX-RN Examination* ("*RN Review I*"), *Saunders Q&A Review for the NCLEX-RN Examination* ("*RN Q&A I*"), and *Saunders Q&A Review for the NCLEX-PN Examination* ("*PN Q&A I*"). (D. 56.1 Stmt. ¶¶ 1, 32-33; P. 56.1 Stmt. ¶¶ 1, 32-33; Hoefler Decl. ¶ 19; Silvestri Decl. ¶ 1; Rotbert Decl. Ex. B.) *RN Review I* was declared out of print on December 1, 2001, and no copies were sold after October 10, 2002, and *RN Q&A I* was declared out of print on February 3, 2002, and no copies were sold after October 10, 2002.[4] (D. 56.1 Stmt. ¶¶ 32-33; P. 56.1 Stmt. ¶¶ 32-33; O'Brien Decl. ¶¶ 3-4.) An additional title, *Saunders Comprehensive Review for the NCLEX-PN Examination* ("*PN Review I*"), was published in 2000. (P. 56.1 Stmt. ¶ 34; D. 56.1 Stmt. ¶ 34; Hoefler Decl. ¶ 20; O'Brien Decl. ¶ 5; Rotbert Decl. Ex. B.) Although not declared out of print until March 23, 2003, *PN Review I* suffered negative sales from October 11, 2002 until the date of its last sale.[5] (P. 56.1 Stmt. ¶ 34; D. 56.1 Stmt. ¶ 34; O'Brien Decl. ¶ 5.)

According to plaintiff, the foregoing titles (collectively, "the infringing works") are all competing texts that contain substantial similarities to MEDS publications, particularly the 1992 edition of *Easy Steps*. (P. 56.1 Stmt. ¶¶ 3-6, 8-27, 29; Hoefler Decl. ¶¶ 19-23, 27-29.) Although

---

[4] Defendants do not mention publication of *PN Q&A I* in their statement of undisputed facts, nor do they otherwise provide any indication as to the dates on which it assumed out of print status and ceased being sold.

[5] From 2001-2006, several other titles followed, including: *Saunders Comprehensive Review for the NCLEX-RN Examination, 2nd and 3rd Editions*, *Saunders Comprehensive Review for the NCLEX-PN Examination, 2nd and 3rd Editions*, *Saunders Q&A Review for the NCLEX-RN Examination, 2nd and 3rd Editions*, *Saunders Q&A Review for the NCLEX-PN Examination, 2nd and 3rd Editions*, *Saunders Strategies for Success for the NCLEX-RN Examination*, and *Saunders Strategies for Success for the NCLEX-PN Examination*. (Hoefler Decl. ¶¶ 21-23, 28-29; Silvestri Decl. ¶ 1; Rotbert Decl. Ex. B.) During this time, defendants also released several combination packages, which coupled for sale one or more of the allegedly infringing works and related software programs. (Hoefler Decl. ¶ 27; Rotbert Decl. Ex. B.)

defendants dispute the extent to which the allegedly infringing works exhibit such similarities (D. Mem. 4-5), they acknowledge that, like MEDS's publications, their titles propose that exam candidates employ a three-part test-taking strategy. (D. 56.1 Stmt. ¶ 8.) As described by defendants, this three-part strategy includes breaking the question down into its component parts to determine what the question is really asking, looking for certain clues as to what the answer is likely to be, and using basic nursing concepts to identify the answer when a question calls for prioritizing. (D. 56.1 Stmt. ¶ 8; Silvestri Decl. ¶ 11.)

Silvestri acknowledges that she relied upon various source materials in drafting the allegedly infringing works, but she avers that – with the exception of those used for titles assembled in 2004 or later – she has since disposed of all such materials. (P. 56.1 Stmt. ¶ 28; Silvestri Dep. 33-36, 82-86.) Nevertheless, defendants concede that Silvestri had access to *Easy Steps* and *Complete Q&A* in the mid-1990s.[6] (D. 56.1 Stmt. ¶ 28; D. Mem. at 4.) After contacting Hoefler by telephone on several occasions to discuss Hoefler's approach to nursing education and MEDS's publications, Silvestri purchased a variety of MEDS resources. (Hoefler Decl. ¶¶ 17-18.) On or about November 29, 1995, for example, Silvestri contacted MEDS and purchased numerous exam prep materials, including 50 copies of *Complete Q&A*. (Hoefler Decl. ¶ 18(a); cf. Silvestri Decl. ¶ 8.) In connection with this sale, MEDS provided Silvestri with a complimentary copy of the 1992 edition of *Easy Steps*, which is designed to be used in conjunction with *Complete Q&A*. (Id.) Several months later, on or about March 27, 1996, Silvestri again contacted MEDS, this time purchasing 250 copies of *Complete Q&A*. (Hoefler

---

[6] Silvestri maintains that she neither possessed plaintiff's books at the time she wrote the allegedly infringing works, nor did she rely on them. (D. 56.1 Stmt. ¶ 28; Silvestri Decl. ¶ 8.) A factfinder at trial would not be required to accept this testimony.

Decl. ¶ 18(b); cf. Silvestri Decl. ¶ 8.)  As before, when filling Silvestri's order, MEDS provided

Silvestri with a complimentary copy of the 1992 edition of *Easy Steps*.[7]  (Id.)

Not until June 2003 did plaintiff discover defendants' alleged infringement.  (Hoefler

Decl. ¶ 24.)  At that time, plaintiff notified defendants in writing of its concern.  (Id.; Strong

Decl. ¶ 2[8]; Rotbert Decl. Ex. G.)  According to plaintiff, in February 2004, defendants provided a

substantive response, admitting, among other things, that their publications were substantially

similar to MEDS's publications, but denying that Silvestri ever referred to MEDS materials

when drafting the allegedly infringing works.  (Hoefler Decl. ¶ 25; cf. Strong Decl. ¶ 8 & Ex. F.)

Defendants also represented that they would rewrite any passages that were identical or nearly

identical to passages appearing in *Easy Steps*.  (Hoefler Decl. ¶ 26; cf. Strong Decl. ¶ 8 & Ex. F.)

The same month, MEDS provided Elsevier with a list of the allegedly infringing passages.

(Hoefler Decl. ¶ 26.)  However, defendants made no further response, nor did they fulfill their

promise to rewrite any identical or nearly identical passages.[9]  (Id.)

---

[7] Aside from these events, which demonstrate Silvestri's access to *Easy Steps* and *Complete Q&A*, Silvestri also had access to other MEDS information.  In 1997, for example, Silvestri acquired a demonstration of MEDS test-taking software that contained outlines of a host of MEDS publications.  (Hoefler Decl. ¶ 18(c).)

[8] All references to the Strong Declaration are to the Second Declaration of William S. Strong, dated November 28, 2007.

[9] Defendants intimate that there was no revision because, despite plaintiff's assertion to the contrary, plaintiff failed to provide them with a list of the passages to which it took issue. (Strong Decl. II ¶¶ 8-9.)  Defendants also argue that whatever willingness they may have expressed to consider revising certain portions of their publications cannot be construed as a promise.  (Id. ¶ 8.)

## II.    The Parties' Contentions

Defendants concede that there are some passages in its books that constitute copyrightable expression, and that bear sufficient similarity to *Easy Steps* for a jury to find copyright infringement.  (D. Mem. 4-5.)  Consequently, defendants move for summary judgment only as to those claims that they contend are time-barred or preempted (D. Mem. 5-6, 21-22), and those passages that they contend either are not copyrightable or lack sufficient similarity to support a finding of infringement.  (Id. 6-21.)  Plaintiff responds by arguing that there are genuine issues of material fact as to whether the written expression incorporated in *Easy Steps* can be accorded copyright protection, and whether the statute of limitations should be equitably tolled.  (P. Mem. 10-12.)

## DISCUSSION

## I.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As a general rule, courts "should be especially wary of granting summary judgment in cases alleging copyright infringement."  Leibovitz v. Paramount Pictures Corp., 948 F. Supp. 1214, 1217 (S.D.N.Y. 1996); see also Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir. 1980).  However, summary judgment may be granted in such cases when "no reasonable trier of fact could find the works substantially similar," or when any alleged similarity pertains only to those elements of a plaintiff's work that are noncopyrightable.  Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996), quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986)

7

(internal quotation marks omitted).

On a motion for summary judgment, the movant bears the "burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). When moving against a party who will bear the ultimate burden of proof on an issue, however, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that a "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof") (internal quotation marks omitted).

Once the moving party has satisfied its burden, the burden then shifts to the nonmoving party to come forward with affidavits, depositions, interrogatories or other sworn evidence sufficient to create a genuine issue of material fact for trial. See Fed. R. Civ. P. 56(e)(2); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party may not satisfy this burden simply by "show[ing] that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see also Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (holding that a nonmovant cannot defeat a motion for summary judgment "merely . . . on the basis of conjecture or surmise"), quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (internal quotation marks omitted). Rather, the nonmovant must advance "enough evidence to support a jury verdict in its favor." Trans Sport, Inc., 964 F.2d at 188.

In ruling on a motion for summary judgment, a court must construe all evidence in the light most favorable to the nonmoving party, including resolving all ambiguities and drawing all factual inferences in the nonmoving party's favor. Rule, 85 F.3d at 1011; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Trans Sport, Inc., 964 F.2d at 188. A court must neither make judgments regarding credibility or conflicting versions of events, nor engage in any weighing of the evidence, as a court resolving a motion for summary judgment is tasked not with resolving disputed issues of fact, but instead with determining whether any genuine issues of material fact remain to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Rule, 85 F.3d at 1011. For purposes of making this determination, an issue is material if it "might affect the outcome of the suit under the governing law." Shade v. Housing Auth. of City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001), quoting Anderson, 477 U.S. at 248 (internal quotation marks omitted).

## II. Copyright Infringement

The Copyright Act of 1976, 17 U.S.C. § 101 et seq., protects "original works of authorship fixed in any tangible medium of expression," including literary works,[10] and accords the authors of such works the exclusive rights of publication, copying, and distribution. Id. §§ 102, 106; see also Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 546-47 (1985). To prove copyright infringement, a plaintiff must demonstrate ownership of a valid copyright and unauthorized copying of a work's original elements by the defendant. See Feist

---

[10] The Copyright Act defines literary works as "works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101.

Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 361 (1991); Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2001).

A.    Ownership of a Valid Copyright

Pursuant to Section 410 of the Copyright Act, a "certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c); see also Boisson, 273 F.3d at 267.  As plaintiff has demonstrated that it registered *Easy Steps* in 1991 and 1992 (see Hoefler Decl. ¶¶ 13, 15), and that it has duly registered all other related publications (see id. ¶¶ 11, 16), the copyrights at issue are presumptively valid.  While this presumption may be rebutted, see Boisson, 273 F.3d at 267, defendants have introduced no evidence tending to refute the copyrights' validity.  Thus, for purposes of this motion, the validity of plaintiff's copyrights is undisputed.

B.    Actual Copying of Plaintiff's Work

Determining whether a defendant has engaged in unauthorized copying of the original elements of a copyrighted work involves two separate inquiries.  See O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd., No. 96 Civ. 7952, 1999 WL 47191, at * 2 (S.D.N.Y. Feb. 2, 1999).  The first is whether, as a factual matter, defendant actually copied portions of the plaintiff's work, and the second is whether any such "copying, as a legal matter, constitute[s] prohibited copyright infringement."  Id.  A plaintiff may establish the fact of copying by direct or indirect evidence.  See Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir. 1992).  Where a plaintiff cannot introduce direct evidence of copying, indirect evidence showing that the "defendant had access to the copyrighted work, and that the allegedly infringing material bears a

substantial similarity to copyrightable elements of plaintiff's work" will suffice. <u>Id</u>.

Establishing that a defendant's "copying is unlawful and hence actionable" involves a narrower analysis, as "the critical question is whether there is so-called 'substantial similarity' between the defendant's work and *the protectable elements* of the plaintiff's work." <u>O.P. Solutions</u>, 1999 WL 47191, at * 5 (emphasis added), quoting <u>Repp v. Webber</u>, 132 F.3d 882, 889 (2d Cir. 1997). "Although the issue of substantial similarity often raises questions of fact not appropriately resolved on a motion for summary judgment, 'a district court may determine noninfringement as a matter of law on a motion for summary judgment either when the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar.'" <u>Id</u>. (alteration in original), quoting <u>Productivity Software Int'l Inc. v. Healthcare Techs., Inc.</u>, No. 93 Civ. 6949, 1995 WL 437526, at *2 (S.D.N.Y. July 25, 1995) (quotation omitted).

Here, defendants concede that Silvestri had access to *Easy Steps* in the mid-1990s. (<u>See</u> D. Mem. 4; D. 56.1 Stmt. ¶ 28; Silvestri Decl. ¶ 8.) While Silvestri denies that she had any version of the book in her possession at the time she wrote the allegedly infringing works (<u>see id</u>.), resolution of this issue involves credibility determinations properly reserved for a jury.[11] Thus, defendants' motion can be granted only upon a showing that, as a matter of law, the only similarities between *Easy Steps* and the allegedly infringing works pertain to noncopyrightable elements or that, even acknowledging the protection accorded the original elements of *Easy*

_____

[11] Even assuming Silvestri's testimony is credible in this respect, it would not – as a matter of law – preclude plaintiff from establishing unlawful copying, as even "[s]ubconscious copying stemming from having read the copyrighted work at some time in the past," <u>Arica Inst., Inc. v. Palmer</u>, 761 F. Supp. 1056, 1066 (S.D.N.Y. 1991), is actionable.

*Steps*, no reasonable jury could conclude that *Easy Steps* and the allegedly infringing works are substantially similar.

1. The Scope of Copyright Protection

Consonant with its aim "[t]o promote the Progress of Science and useful Arts," Art. I, § 8, cl. 8, copyright protects those elements of a work that are original to the author, *i.e.*, the author's original expression,[12] but the facts and ideas underlying such expression "are free for the taking." Feist, 499 U.S. at 349, quoting Jane C. Ginsburg, Creation and Commercial Value: Copyright Protection of Works of Information, 90 Colum. L. Rev. 1865, 1868 (1990); see also 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); Harper & Row, 471 U.S. at 547. Subsequent authors may therefore draw on the facts and ideas exposed by earlier works so long as the authors' works "do[] not feature the same selection and arrangement" or copy "the [prior author's] precise words." Feist, 499 U.S. at 348-49; see also Branch v. Ogilvy & Mather, Inc., No. 89 Civ. 2440, 1990 WL 74540, at * 7 (S.D.N.Y. May 30, 1990) (noting that while "a plaintiff can protect neither his ideas nor his use of procedures and techniques to express th[ose] ideas, he can protect the creative arrangement and interaction of the techniques composing the expression").

Here, defendants argue that plaintiff's test-taking strategies and techniques are not themselves copyrightable. (D. Mem. 6-8.) Plaintiff, however, contends that defendants have

_____

[12] This protection stands so long as the selection and arrangement is not "so mechanical or routine as to require no creativity whatsoever." Feist, 499 U.S. at 362.

appropriated the fundamental structure adopted by *Easy Steps*, including *Easy Steps'* topics and the order in which those topics are addressed, and that defendants have otherwise engaged in verbatim or near-verbatim copying of various aspects of plaintiff's original language. (P. Mem. 5-7.) To the extent that defendants draw on the well-established rule that ideas cannot be copyrighted, their position is entirely sound. Their claims that plaintiff cannot seek protection of its particular selection or expression of those strategies and techniques (D. Mem. 8-11), however, are less persuasive.

Courts have held that although based on facts that are not themselves copyrightable, exam prep materials can constitute protectible expression. See College Entrance Book Co., Inc. v. Amsco Book Co., Inc., 119 F.2d 874, 874-76 (2d Cir. 1941) (according copyright protection to a book designed to prepare high school students for examinations given by the New York Board of Regents where there was evidence that a list of French words, which constituted only 15 percent of the printed matter in both plaintiff's and defendant's work, was copied by defendants); DF Inst., Inc. v. Marketshare Eds, No. 07 Civ. 1348, 2007 WL 1589525, at * 4, 7 (D. Minn. June 1, 2007) (finding some of plaintiff's exam prep materials copyrightable, particularly its practice questions and answers). Similarly, although a creator of standardized test questions, and – by logical extension – a creator of practice test questions, "cannot appropriate concepts such as rules of punctuation, analogies, vocabulary or other fundamental elements of English composition, it can, using its own resources, devise questions designed to test these concepts and secure valid copyrights on [such] questions." Educ. Testing Servs. v. Katzman, 793 F.2d 533, 540 (3d Cir. 1986); see also Educational Testing Service v. Simon, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) (finding defendants liable for copyright infringement

because they "copied the creative 'heart' of each infringed [test] question").  This is particularly

so where the test questions "reflect original expression in their wording, particularized facts, and

answer choices."  See Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc., 458

F. Supp. 2d 252, 259 (E.D. Pa. 2006).  While anyone may teach the principles and information

tested by such questions, they may not "[d]o[] so using the same fact patterns, prompts, and

answer-choice combinations found in [the protected test] questions."  Id.; cf. Simon, 95 F. Supp.

2d at 1090.

Applying these principles, defendants have not established, as a matter of law, that

plaintiff's work cannot be accorded copyright protection merely because it addresses test

preparation in the field of nursing.  Their argument that plaintiff's expression of its strategies and

techniques is dictated largely by the NCLEX and the science of nursing (D. Mem. 8-9) does not

change this fact.  Addressing a similar argument, the court in Association of American Medical

Colleges v. Mikaelian, 571 F. Supp. 144 (E.D. Pa. 1983), wrote:

> The defendants have contended that the MCAT test questions are
> not copyrightable in that they are merely statements of scientific
> fact, facts which are in the public domain.  However, the MCAT
> questions are undoubtedly the result of original work performed by
> scientists and scholars retained by AAMC and the Research
> Institute to create MCAT questions.  Certainly, any valid MCAT
> science questions will invoke scientific fact in order to pose a
> problem which will test the scientific knowledge of the test taker.
> However, the mere fact that MCAT questions refer to scientific
> fact does not place these questions in the public domain.

Id. at 150.  Because defendants have not shown that a reasonable jury would be precluded from

finding any of plaintiff's expressions of its strategies and techniques protectible, their motion for

summary judgment is denied in this respect.

2.     Merger Doctrine

Under the merger doctrine, expression that would otherwise be copyrightable will not be accorded copyright protection "where there is only one or so few ways of expressing [the] idea that protection of the expression would effectively accord protection to the idea itself." Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991). A court invoking this doctrine must exercise considerable caution, as applying the doctrine too liberally ignores "arguably available alternative forms of expression," while applying the doctrine too narrowly will accord protection to ideas. Id. In general, "[a]s long as selections of facts involve matters of taste and personal opinion, there is no serious risk that withholding the merger doctrine will extend protection to an idea." Id. at 707. Putting aside the question of how the idea expressed in plaintiff's works should be defined,[13] defendants have not shown that, as a matter of law, there are so few ways of

---

[13] A court's decision whether to apply the merger doctrine turns, at least in part, on its definition of the author's idea. See Sparaco v. Lawler, Matusky, Skelly Engineers LLP, 60 F. Supp. 2d 247, 252 (S.D.N.Y. 1999); see also Mason v. Montgomery Data, Inc., 967 F.2d 135, 138, 140 (5th Cir. 1992). However, as noted by at least one court, "[s]urprisingly little has been said by courts or scholars about how to determine the idea behind an expression." Tensor Group, Inc. v. Global Web Sys., Inc., No. 96 Civ. 4606, 1998 WL 887081, at * 2 (N.D. Ill. Dec. 11, 1998). In light of what little case law does address the matter, it is clear that an idea must "be formulated on an abstract level." Id. at * 3, quoting 4 Nimmer on Copyright § 13.03[B][3] n.167. Otherwise, "a copyright defendant could always avoid liability merely by describing a plaintiff's work in great detail and then labeling that description the 'idea' of plaintiff's work. The 'idea' of any work could always be defined in such detail that the description of the expression would add nothing to the 'idea', thus allowing a defendant to engage in all but verbatim copying. Such a ploy cannot be allowed. . . . [Rather,] the description of the work for the purpose of identifying its idea must be a simple one." Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 148 (D.N.J. 1982), citing Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1168 (9th Cir. 1977). In addition, courts construing an author's idea must bear in mind "the preservation of the balance between competition and protection reflected in the patent and copyright laws." Mason, 967 F.2d at 139, quoting Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 742 (9th Cir. 1971). Because neither party has sufficiently briefed this matter, which necessarily involves ad hoc determinations, see Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960), and because

expressing the idea that the idea and the expression should be considered one. Although defendants argue that the merger doctrine precludes this Court from finding copyright infringement with respect to certain sentences contained in plaintiff's work (see D. Mem. 17-19 & Ex. A), for reasons discussed below, the Court will not parse plaintiff's work at the level of sentences and passages for purposes of awarding defendants summary judgment as to specific portions of plaintiff's work.[14]

Moreover, because plaintiff has demonstrated that there are a variety of competing texts designed to prepare aspiring nurses for the NCLEX, and that these texts use neither its organizational structure nor its precise choice of words and phrases (see P. Mem. 11; Hoefler Decl. ¶ 30), there is a genuine issue of material fact as to whether there are so few ways of expressing plaintiff's idea that its expression of the idea, which otherwise would be copyrightable, cannot be not protected.[15]  See Mason v. Montgomery Data, Inc., 967 F.2d 135, 138-39 (5th Cir. 1992) (finding application of the merger doctrine inappropriate on summary

_____

defendants' arguments favoring application of the merger doctrine fail on other grounds, defining plaintiff's "idea" at this juncture is both unwise and unnecessary.

[14] Relying on Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992), and Bateman v. Mnemonics, Inc., 79 F.3d 1532 (11th Cir. 1996), defendants argue that it is entirely proper to apply merger analysis to specific parts of a work, as opposed to the work as a whole.  (D. Reply Mem. 9.)  Because Computer Associates and Bateman address the application of the merger doctrine to computer programs, which the Second Circuit has found are "the composite result of interacting subroutines," each of which "is itself a program, and thus, may be said to have its own 'idea,'" Computer Assocs., 982 F.2d at 705, these cases are distinguishable on their facts.

[15] Defendants argue that the existence of these competing texts is irrelevant because they do not adopt the strategic visions and methods advanced by plaintiff's and defendants' works. (See D. Reply Mem. 9.)  While defendants may ultimately succeed on this argument, based on the current record, assessment of the various approaches taken by any competing works presents questions of fact for trial.

judgment where the record "contains copies of maps created by [plaintiff's] competitors that prove beyond dispute that the idea embodied in [plaintiff's] maps is capable of a variety of expressions"); cf. Consolidated Music Publishers, Inc. v. Hansen Publ'ns, Inc., 339 F. Supp. 1161, 1163 (S.D.N.Y. 1972) (finding that differences in arrangement and presentation between plaintiff's instruction book for playing the rhythm guitar and other books addressing the same subject matter "demonstrate[] that there are various ways of presenting this type of instructional material and support[] the conclusion that plaintiff's work is indeed copyrightable"). Thus, insofar as it is based on application of the merger doctrine, defendants' motion for summary judgment is denied.

### 3. Substantial Similarity

In determining substantial similarity, a court generally applies the ordinary observer test, asking "whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 166 F.3d 65, 70 (2d Cir. 1999). Where a work contains both protectible and unprotectible elements, however, "the test must be 'more discerning.'" Id. (quotation omitted). In these situations, a court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the *protectible elements, standing alone,* are substantially similar." Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis in original); see also Nihon, 166 F.3d at 70; Boyle v. Stephens, Inc., No. 97 Civ. 1351, 1998 WL 80175, at * 3 (S.D.N.Y. Feb. 25, 1998). As the Second Circuit has explained:

> [A] plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the 'artistic' aspects of a work; the 'mechanical' or 'utilitarian'

features are not protectible.

Knitwaves, 71 F.3d at 1002, quoting Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir. 1994).

In applying the "more discerning ordinary observer test," a court should not make the inquiry "so mechanical and counterintuitive" that the inquiry requires the court to "dissect [works] into their separate components, and compare only those elements which are in themselves copyrightable." Id. at 1003. Instead, keeping in mind the distinction between a work's nonprotectible elements and its selection, coordination, arrangement, and expression of those elements – which is protectible – a court must look to the protected work's and the allegedly infringing work's "total concept and feel." Id., quoting Eden Toys, Inc. v. Marshall Field & Co., 675 F.2d 498, 500 (2d Cir. 1982) (internal quotation marks omitted); see also Branch, 1990 WL 74540, at * 8 (noting that defendants "will be liable only if the artistic expression of the advertisements, *as a whole*, is substantially similar to the artistic expression of [plaintiff's work], *as a whole*") (emphasis added).

With these principles in mind, a court assessing substantial similarity must determine whether "'the copying [at issue] is quantitatively and qualitatively sufficient' to support a finding of infringement." Nihon, 166 F.3d at 70, quoting Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 75 (2d Cir. 1997) (internal quotation marks omitted). As compared to a work that is "wholly original," an infringed work containing both protectible and unprotectible elements must demonstrate "a higher quantity of copying . . . to support a finding of substantial similarity." Id. at 71. However, "[i]t is not possible to determine infringement through a simple word count; the quantitative analysis of two works must always occur in the shadow of their qualitative nature."

18

Id.  For purposes of this inquiry, copying may present itself in one of two forms: (1) fragmented literal similarity, which exists where there has been "exact copying of a portion of a work," Paramount Pictures Corp. v. Carol Publ'g Group, 11 F. Supp. 2d 329, 333 (S.D.N.Y. 1998); see also Ringgold, 126 F.3d at 75 n.3, or (2) comprehensive non-literal similarity, which exists "where there is no word-for-word or literal similarity but where defendant has nonetheless appropriated the 'fundamental essence or structure' of plaintiff's work," Arica, 970 F.2d at 1073 (citation omitted).

Defendants provide an onslaught of arguments, which, taken together, are intended to demonstrate that the portions of their publications at issue in this motion bear no substantial similarity to the protectible aspects of plaintiff's work.  (D. Mem. 11-13 (defendants' "rationales" are related to plaintiff's rationales only thematically and do not involve verbatim copying beyond individual words and phrases, which are noncopyrightable); id. 14-17 (organization of various chapters in defendants' works, while presenting some basic similarities, do not bear sufficient similarity to plaintiff's overall organization to support a finding of infringement).)  The recitation of the law that accompanies defendants' arguments is, for the most part, spot on.  At this juncture, however, it is inappropriate to reach these arguments, as defendants base the arguments on a methodologically unsound premise.  While conceding that some of their sentences and passages contain copyrightable expression and bear such similarity to protected elements of plaintiff's work that they cannot be resolved on a motion for summary judgment, defendants nonetheless contend that they are entitled to summary judgment as to various other sentences and passages that do not meet this standard.

"It is entirely immaterial that in many respects plaintiff's and defendant[s'] works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown." Churchill Livingstone, Inc. v. Williams & Wilkins, 949 F. Supp. 1045, 1055 (S.D.N.Y. 1996) (alteration omitted), quoting 3 Nimmer on Copyright § 13.03[B] at 13-51. "As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" Harper & Row, 471 U.S. at 565, quoting Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936); see also Rogers v. Koons, 960 F.2d 301, 308 (2d Cir. 1992) ("[N]o copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated."). That defendants can identify certain sentences or passages that bear no similarity to plaintiff's work says nothing of the nature or importance of those sentences and passages that do bear similarity to plaintiff's work and which defendants have conceded are inappropriate for resolution on this motion for summary judgment. See Meredith Corp. v. Harper & Row Publishers, Inc., 413 F. Supp. 385, 386-87 (S.D.N.Y. 1975) (flagging "the issue of whether an admitted substantial infringer is entitled to Court review of every corner of the infringing book for the purpose of excising the plagiarized portions from those which are not," and rejecting defendants argument that plaintiff's rights did not extend to the 89% of the allegedly infringing work that was not plagiarized because the infringing work demonstrated an "extensive taking of the structure and topical sequence of [plaintiff's] book" and any copying affected the entire work, not just the 11% admittedly plagiarized); see also Educ. Testing Servs., 793 F.2d at 542 (noting that where the record supported plaintiff's claim that certain test questions had been copied either verbatim or based on "recognizable paraphrases," "the fact that some questions referred to by [plaintiff] may not be infringing" did not diminish plaintiff's

likelihood of success for purposes of a preliminary injunction).

Indeed, by acknowledging that there are some portions of their works that contain copyrightable information that, when compared with plaintiff's work, may admit of a finding of substantial similarity, defendants all but concede that summary judgment is unwarranted.  See O.P. Solutions, 1999 WL 47191, at * 5 (summary judgment should be granted in a copyright infringement case only where "the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar") (alteration in original), quoting Productivity Software, 1995 WL 437526, at *2.  Without having the totality of both the similar and dissimilar portions of the parties' works before the Court on this motion, there is no basis for concluding that a reasonable jury could not find substantial similarity.  Additionally, it should be noted that accepting defendants' invitation to parse the parties' works in the manner advocated would ignore the principle that infringement should be determined by comparing the total concept and feel of the protected work to the total concept and feel of the allegedly infringing work.  See Knitwaves, 71 F.3d. at 1003; Branch, 1990 WL 74540, at * 8.  Even from the similar portions that are before the Court – in the form of concededly similar portions or material defendants incorrectly argue is dissimilar – it is apparent that plaintiff's infringement claim possesses sufficient merit to require trial.  For these reasons, and except as otherwise noted herein, defendants' motion for partial summary judgment is denied.

C.     Statute of Limitations

Defendants argue that plaintiff's action is time-barred with respect to any claims involving *RN Review I* and *RN Q&A I*, as these books were deemed out of print prior to October

2002 and garnered no sales during the three years preceding plaintiff's commencement of this action.  (See D. Mem. 6.)  Defendants also contend that they are entitled to summary judgment on any of plaintiff's claims involving *PN Review I*, because plaintiff has limited its requested relief to an accounting of profits and *PN Review I* had negative sales numbers during the relevant limitations period.  (See id.)

Plaintiff, in turn, argues that defendants reaped profits from their early publications as late as 2002, and that such profits fall within the three-year statute of limitations defendants seek to apply.  (See P. Mem. 11.)  Plaintiff also argues that the statute of limitations should be equitably tolled on account of defendants' alleged spoliation of evidence, and in light of their promise to rewrite the allegedly infringing portions of their publications but subsequent failure to do so.  (Id. 11-12.)

Under the Copyright Act, a copyright infringement action must be commenced within three years of its accrual.  See 17 U.S.C. § 507(b); see also Kregos v. Associated Press, 3 F.3d 656, 661 (2d Cir. 1993).  Courts have disagreed as to when such claims actually accrue. However, following the thorough analysis set forth in Auscape International v. National Geographic Society, 409 F. Supp. 2d 235 (S.D.N.Y. 2004), plaintiff's cause of action accrued on the date of infringement, not on the date that it may have discovered such infringement.  See id. at 247; Chivalry Film Productions v. NBC Universal, Inc., No. 05 Civ. 5627, 2006 WL 89944, at * 1 (S.D.N.Y. Jan. 11, 2006).

Because plaintiff commenced the present action on October 11, 2005, any claims for damages or profits from sales of the allegedly infringing works that pre-date October 11, 2002, are time-barred.  For purposes of this motion, plaintiff has conceded that *RN Review I* and *RN*

*Q&A I* went out of print on December 1, 2001, and February 3, 2002, respectively, and that

neither book generated any sales after October 10, 2002.  (See D. 56.1 Stmt. ¶¶ 32-33; P. 56.1

Stmt. ¶¶ 32-33.)  Thus, defendants' motion for summary judgment is granted with respect to

these two titles.

While defendants also seek dismissal of those claims involving *PN Review I*, this aspect

of their motion is denied.  Defendants claim that plaintiff is bound by its representation, set forth

in its answer to Interrogatory No. 2, that it would not attempt to prove its actual damages.  (See

D. Mem. 6; D. 56.1 Stmt. ¶ 31 & Ex. C.)  Although, in this Circuit, contention interrogatories[16]

are treated as judicial admissions "that generally estop the answering party from later seeking to

assert positions omitted from, or otherwise at variance with, those responses,"[17] Wechsler v.

Hunt Health Sys., Ltd., No. 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999),

the Copyright Act classifies actual damages and infringer's profits as a single category of

damages.  See 17 U.S.C. § 504(a); Latin American Music Co., Inc. v. Spanish Broadcasting Sys.,

Inc., 866 F. Supp. 780, 782 (S.D.N.Y. 1994) ("A plaintiff in a copyright infringement action may

elect to pursue either (i) actual damages plus infringer's profits or (ii) statutory damages, but not

---

[16] "Contention interrogatories issued pursuant to Rule 33 of the Federal Rules of Civil Procedure are one of many discovery tools designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial."  Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294, 1999 WL 672902, at * 1 (S.D.N.Y. Aug. 27, 1999).  These interrogatories are used to gather a variety of information, "including identification of a party's legal positions regarding a given issue and the evidence on which those contentions are based." Id.

[17] See also Guadagno v. Wallack Ader Levithan Assocs., 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (emphasizing the difference between judicial admissions, or "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them," and ordinary evidentiary admissions, which "may be controverted or explained by the party").

both.").  Moreover, "a plaintiff in a copyright infringement case . . . may choose the type of damages it will seek at any time until final judgment is rendered."[18]  Latin American Music, 866 F. Supp. at 783; see also 17 U.S.C. § 504(c)(1); N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992); Rogers v. Koons, 960 F.2d 301, 312-13 (2d Cir. 1992) (noting that although plaintiff moved for infringing profits on summary judgment and appealed from the district court's denial of such profits pending trial on the issue of damages, plaintiff "remain[ed] at liberty to elect statutory damages in lieu of an award of actual damages and apportioned profits").  Accordingly, this Court declines to hold that a plaintiff served contention interrogatories in a copyright action must make a binding election of damages prior to the time the controlling statutory scheme establishes for doing so.  Thus, defendants motion for summary judgment is denied with respect to those claims involving PN Review I.

Confronted with defendants' statute of limitations defenses, plaintiff argues that there is an issue of fact as to whether the limitations period should be equitably tolled, because defendants disposed of Silvestri's source materials after they were under an obligation to preserve all relevant evidence, and because defendants represented that they would rewrite the allegedly infringing portions of their works but ultimately failed to do so.  (P. Mem. 11-12.) These arguments are meritless.  When a plaintiff is aware of the existence of a cause of action but delays in filing suit because of a defendant's misconduct, equitable estoppel may toll the limitations period.  See Barksdale v. Robinson, 211 F.R.D. 240, 245 (S.D.N.Y. 2002).  Courts

---

[18] This right is forfeited, however, where a plaintiff "fail[s] to produce any evidence of actual damages [during] discovery."  Latin American Music, 866 F. Supp. at 783.  In such situations, a plaintiff will be deemed to have elected statutory damages by default.  See id. at 782-83.

have held that this exception applies where "the defendant misrepresented the length of the limitations period or 'lulled the plaintiff into believing it was not necessary to commence the litigation.'" Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997), quoting Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985). However, in seeking to apply this doctrine, a plaintiff must demonstrate that it has exercised due diligence. See Netzer, 963 F. Supp. at 1316. Where "[a] plaintiff . . . unreasonably relies on the reassurances of a wrongdoer[, it] has not satisfied this obligation." Id.

Plaintiff's argument that it delayed filing suit on account of defendants' representation that they would rewrite the allegedly infringing passages may very well give rise to an issue of fact as to whether defendants lulled plaintiff into believing that this action was unnecessary. However, plaintiff cannot demonstrate that it has exercised due diligence. Plaintiff asserts that defendants promised to rewrite the allegedly infringing passages in February 2004, and that it provided defendants with a list of the allegedly infringing passages the very same month. (See Hoefler Decl. ¶ 26; cf. Strong Decl. ¶ 8 & Ex. F.) Accepting these facts as true, plaintiff nonetheless delayed an additional year and a half before filing suit. Such delay cannot constitute due diligence.

As to plaintiff's spoliation claims, even assuming, *arguendo*, that there was spoliation of evidence, it is entirely unclear how any such spoliation of evidence, which could not have occurred or been discovered until after the litigation was begun, could have induced plaintiff's delay.[19] Accordingly, plaintiff's tolling arguments cannot defeat summary judgment.

---

[19] Whether plaintiff is entitled to an adverse inference as a result of the alleged spoliation presents a different issue, which need not be resolved at this stage of the litigation.

## III. State Law Claims

In addition to alleging copyright infringement, plaintiff also alleges unfair competition and misappropriation under state law. (Compl. ¶¶ 49-52.)[20] Defendants argue that these common law claims arise from the same facts as plaintiff's copyright infringement claim and are therefore preempted by Section 301(a) of the Copyright Act. (D. Mem. 21-22.) Plaintiff, in response, contends that defendants cannot dispute the validity of its claim to copyright protection, on the one hand, while arguing, on the other hand, that its common law claims are preempted precisely because it has alleged such protection. (P. Mem. 12.) Plaintiff further contends that because its common law claims are not premised solely on the copying of its protected expression, preemption is improper. (Id.)

Construing Section 301(a) of the Copyright Act, courts have held that state causes of action are preempted where "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). As previously discussed, plaintiff's works clearly fall within the category of works protected by the Copyright Act. Thus, the only remaining question is whether the second prong of the preemption test, commonly referred to as the general scope requirement, has been satisfied.

In applying the general scope requirement, a court will find a state law claim preempted

---

[20] All references to the complaint are to plaintiff's amended complaint, dated October 6, 2006.

where the claim "involve[s] acts of reproduction, adaptation, performance, distribution or display" – all of which would, "by [themselves], infringe one of the exclusive rights provided by federal copyright law"– and where "the state law claim [does] not include any extra elements that make it qualitatively different from a copyright infringement claim." Id. Accordingly, the Second Circuit has held that federal copyright law preempts "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir. 1997); see also Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986); Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 247 (2d Cir. 1983).

Here, plaintiff claims that "[d]efendant[] Elsevier ha[s] misappropriated the results of [p]laintiff's skill and expenditures of time and labor in creating and publishing the MEDS' [sic] Nursing Exam Material, and otherwise ha[s] reaped where [p]laintiff has sown." (Compl. ¶ 51.) Because plaintiff alleges that this misappropriation arises from defendants' publication of the allegedly infringing works, however, there is no qualitative difference between this claim and plaintiff's copyright infringement claim. While plaintiff does assert that "[d]efendants have, by and through their agents, including Silvestri, misappropriated MEDS' Nursing Exam Material, and unfairly competed against [p]laintiff, with malice, wanton, and/or with recklessness akin to malice or wanton that betokens improper motive or vindictiveness" (Compl. ¶ 52), allegations of bad faith or ill-intent are insufficient to "transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." Briarpatch, 373 F.3d at 306; see also Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc., 565 F. Supp. 2d 505, 510 (S.D.N.Y. 2008); Orange County Choppers, Inc v. Olaes Enters., Inc., 497 F. Supp.

2d 541, 556 (S.D.N.Y. 2007). As made clear by the Second Circuit, "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature.'" Nat'l Basketball Ass'n, 105 F.3d at 851, quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992) (internal quotation marks and citation omitted).

Even assuming, as argued by plaintiff, that plaintiff's unfair competition and misappropriation claims are premised, at least in part, on phone discussions between Hoefler and Silvestri in which Hoefler conveyed commercially valuable information to Silvestri, and Silvestri subsequently used that information, these allegations would – at most – give rise to a claim of unfair competition or misappropriation involving "reverse passing off," *i.e.*, defendants' attempts to "sell[] plaintiff's products as [their] own." Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332, 2005 WL 1337864, at * 6 (S.D.N.Y. June 3, 2005) (quotation omitted). Apart from the dearth of evidence in the record supporting such a claim, claims alleging reverse passing off are preempted because they are the functional equivalent of copyright infringement claims. See id. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted with respect to plaintiff's copyright claims relating to *Saunders Comprehensive Review for the NCLEX-RN, 1st Edition*, and *Saunders Q&A Review for the NCLEX-RN Examination, 1st Edition*, and with respect to plaintiff's claims for unfair competition and misappropriation under state law. Defendants' motion is denied in all other respects.

SO ORDERED.

Dated:     New York, New York
           September 30, 2008

GERARD E. LYNCH
United States District Judge